**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| A.T. CLAYTON & CO., a division of | : | |
| INTRAGRATED RESOURCES | : | CIVIL ACTION NO. |
| HOLDINGS, INC., | : | 3:11-CV-1218 (JCH) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD HACHENBERGER, | : | JANUARY 29, 2013 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc.
No. 29) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 30)**

**I.     INTRODUCTION**

Plaintiff A.T. Clayton & Co. ("A.T. Clayton"), a Connecticut paper products

company, brings this action against defendant Donald Hachenberger for breach of a

personal guaranty.  Hachenberger filed this Motion for Partial Summary Judgment

("Hachenberger Mot. Partial Summ. J.") (Doc. No. 29) as to his liability for obligations of

certain companies that predated the signing of the guaranty.  A.T. Clayton

simultaneously filed a Motion for Summary Judgment ("A.T. Clayton Mot. Summ. J.")

(Doc. No. 30) as to its claim against Hachenberger and Hachenberger's asserted

affirmative defenses.  For the following reasons, Hachenberger's Motion for Partial

Summary Judgment is **denied**, and A.T. Clayton's Motion for Summary Judgment is

**granted in part and denied in part**.

**II.    STANDARD OF REVIEW**

A motion for summary judgment "may properly be granted . . . only where there is

no genuine issue of material fact to be tried, and the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574

1

F.3d 129, 151 (2d Cir.2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir.2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir.2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir.2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## III.   FACTUAL BACKGROUND[1]

A.T. Clayton & Co. is a Connecticut corporation that is in the business of supplying paper products, and it is a division of Intragrated Resources Holdings, Inc. ("IRH").  See Plaintiff's Local Rule 56(a)(1) Statement in Support of Motion for Summary Judgment ("Pl.'s 56(a)(1) Mot. Summ. J.") (Doc. No. 30-2 at 24) at ¶ 1; Defendant's Local Rule 56(a)(2) Statement ("Def.'s 56(a)(2)") (Doc. No. 34) at ¶ 1.  Greenwood Advertising & New Media, Inc. ("Greenwood") is or was a corporation with a principal place of business in South Carolina.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 2; Def.'s 56(a)(2) at ¶ 2.  Donald Hachenberger is an individual residing in Florida.  See Defendant's Local Rule 56(a)(1) Statement in Support of Motion for Partial Summary Judgment ("Def.'s 56(a)(1) Mot. Partial Summ. J.") (Doc. No. 32) at ¶ 4.[2]

On or about August, 2008, Hachenberger executed and delivered to A.T. Clayton an Unconditional Personal Guaranty (the "Guaranty") relating to obligations of Greenwood to A.T. Clayton in excess of $1,500,000.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 4; Def.'s 56(a)(2) at ¶ 4.  The most pertinent section of the Guaranty reads:

> 1. Guaranty.  The Guarantor unconditionally guaranties the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all

---

[1] Both A.T. Clayton and Hachenberger submitted Local Rule 56(a)(1) statements in connection with their simultaneously filed Motions for Summary Judgment and Partial Summary Judgment.  However, only Hachenberger filed a Local Rule 56(a)(2) statement, which also contained a statement of additional facts. The court will endeavor to integrate the statements for an accurate account of the factual background, however, the court reminds counsel for A.T. Clayton that it was required to submit such a statement under D. Conn. L. Civ. R. 56(a)(2) and that, "Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1 or in the Court imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." D. Conn. L. Civ. R. 56(a)(3).

[2] A.T. Clayton did not file a Rule 56(a)(2) statement outlining its position on this fact.  This asserted fact is supported by a citation to the record and the court deems it admitted.

> obligations of the Debtor to ATC now or hereafter arising on account of the Transaction, together with all interest and expenses incurred by ATC (including reasonable attorneys' fees) in enforcing any of its rights under such obligations and this Guaranty . . . .  Notwithstanding anything to the contrary herein contained, the liability of the Guarantor hereunder shall be limited to Obligations of the Debtor to ATC in excess of $1,500,000.

Def.'s 56(a)(1) Mot. Partial Summ. J. at Ex. F.  The parties dispute whether the Guaranty covered obligations then existing between Greenwood and A.T. Clayton, or only obligations going forward.

The Guaranty provides for the payment of certain collection costs and attorney's fees.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 5; Def.'s 56(a)(2) at ¶ 5.  Pursuant to the terms of the Guaranty, Hachenberger agreed that any legal proceeding arising out of the Guaranty shall be brought in the Connecticut state courts or the courts of the United States located in Connecticut, and further submitted and consented in advance to such jurisdiction.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 6; Def.'s 56(a)(2) at ¶ 6.

The parties dispute whether, as of April 1, 2010, Greenwood was indebted to A.T. Clayton in the amount of $2,994,536.18 for paper sold and delivered by A.T. Clayton to Greenwood, and whether Greenwood had failed to make payments to A.T. Clayton.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 7; Def.'s 56(a)(2) at ¶ 7, 13, 14, 15.  It is not entirely clear whether Hachenberger solely disputes that the amount of outstanding indebtedness was incorrectly calculated by A.T. Clayton, or whether he disputes that any indebtedness existed at all.  Def.'s 56(a)(2) at ¶ 7.

On April 1, 2010, IRH sent a document to Hachenberger of the amounts due from Greenwood and demanded payment from Hachenberger of the amount due in excess of $1,500,000.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 8; Def.'s 56(a)(2) at ¶ 8.  Hachenberger disputes that the document was ever received.  Def.'s 56(a)(2) at ¶ 8.

4

Hachenberger has never paid any moneys pursuant to the Guaranty.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 9, 10; Def.'s 56(a)(2) at ¶ 9, 10.  The parties dispute whether this non-payment constitutes a breach of the Guaranty.  A.T. Clayton has incurred attorney's fees and expenses in connection with efforts to recover the sums due from Greenwood and from Hachenberger under the Guaranty.  Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 11; Def.'s 56(a)(2) at ¶ 11.

The following factual assertions are presented solely in either Hachenberger's 56(a)(2) statement or his 56(a)(1) statement in support of his Motion for Partial Summary Judgment.

Hachenberger never owned an interest in Greenwood.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 11.  In 2008, Hachenberger acquired 100 percent of the stock of the Geo. W. Park Seed Co. Inc. ("Park Seed"), a business located in South Carolina. Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 5.  Around the same time, Hachenberger acquired ownership in Jackson & Perkins Company, Inc., which Hachenberger relocated to South Carolina.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 6.  Both of these companies were consumer agriculture businesses that sold live plants, seeds, and gardening products directly to consumers through mail order catalogs.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 7.  Paper purchases for the two companies were made through Greenwood, which was incorporated in 2001.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 9, 10.  During the five years prior to Hachenberger's acquisition of Park Seed and J&P, A.T. Clayton sold paper to Greenwood for the benefit of Park Seed, but did no business with J&P.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 12.  After

Hachenberger became an owner of Park Seed and J&P, Greenwood purchased paper for both companies from A.T. Clayton.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 13.

On March 6, 2008, Park Seed signed a Guarantee Agreement ("Park Seed Guaranty")  that guaranteed payments of obligations of Greenwood to A.T. Clayton. Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 16.  At the time Hachenberger signed his personal Guaranty in August 2008, Greenwood had already incurred debts to A.T. Clayton.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 19.  A.T. Clayton informed Hachenberger that it would not provide any paper to his companies until a personal guaranty was signed.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 21.

After Hachenberger's Guaranty was signed, Greenwood ordered new paper from A.T. Clayton, and Park Seed and J&P made periodic payments to A.T. Clayton.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 22.  In late 2009, when Greenwood's outstanding balance reached $2.5 million, A.T. Clayton refused to extend further credit.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 23, 24.

In April 2010, Park Seed initiated Chapter 11 bankruptcy proceedings in the District of South Carolina.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 25.  In late July, 2010, A.T. Clayton filed a claim in that bankruptcy in the amount of $2,944,536.00, which it claims represents the outstanding invoices issued to Greenwood for paper products and for unpaid interest and service charges.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 26.  Subsequently, J&P also filed for Chapter 11 bankruptcy in the District of South Carolina.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 27.  A.T. Clayton also filed a claim in that bankruptcy in the amount of $2,944,536.00.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 28.  As a result of these claims, A.T. Clayton received a payment of

$106,253.79 out of the Park Seed bankruptcy estate via a check dated June 24, 2011. Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 29, 30.  At the close of the bankruptcy proceedings, both Park Seed and J&P were sold to a third party, and Greenwood was administratively dissolved.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 31.  Hachenberger retained no interest in the companies and obtained no payment from the bankruptcies. Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 32.

Hachenberger did not retain any of the corporate records for Greenwood, Park Seed, or J&P after the sale and/or dissolution of those companies.  Def.'s 56(a)(2) at ¶ 16.

## IV.   DISCUSSION

### A.  Motion for Partial Summary Judgment

The court first turns to Hachenberger's Motion for Partial Summary Judgment, which concerns whether Hachenberger is liable for a portion of Greenwood's debts that predated the signing of the Guaranty itself.[3]  This question is one of contract construction.  Both parties argue that the Guaranty, on its face, is unambiguous and admits of only one possible interpretation.  See Defendant's Memorandum in Support of Motion for Partial Summary Judgment ("Def.'s Memo. Supp. Mot. Partial Summ. J.") (Doc. No. 31) at 8 ("[I]t is clear that the Hachenberger Guaranty is unambiguous in its purely prospective application."); Plaintiff's Memorandum in Opposition to Motion for Partial Summary Judgment ("Pl.'s Memo. Opp. Mot. Partial Summ. J.") (Doc. No 42) at 3 ("[T]he Guaranty unambiguously and explicitly states that Hachenberger is liable for the punctual payment of all of Greenwood's debts existing at the time the contract was

---

[3] A.T. Clayton also argues this point in its Motion for Summary Judgment.  See A.T. Clayton Mot. Summ. J. at 27.

executed, August, 2008, and thereafter.") (emphasis omitted).  The parties agree that the Guaranty stipulates that Connecticut law applies.  See Pl.'s 56(a)(1) Mot. Summ. J. at ¶ 6; Def.'s 56(a)(2) at ¶ 6; Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 37.

In Connecticut, "'[A] guarantee is a promise to answer for the debt, default or miscarriage of another. . . .  It is simply a species of contract.'"  One Country, LLC v. Johnson, 137 Conn.App. 810, 823 (Conn. App. 2012) (quoting Regency Savings Bank v. Westmark partners, 59 Conn.App. 160, 164 (Conn. App. 2000).  Here, both parties assert that the Guaranty is unambiguous in its meaning.

> 'If . . . the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . Well established principles guide our analysis in determining whether the language of a contract is ambiguous.  [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself.  [A]ny ambiguity in a contract must emanate from the language used by the parties. . . .  In contrast, [a] contract is unambiguous when its language is clear and conveys a definitive and precise intent. . . .  The court will not torture the words to impart ambiguity. . . .  Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.'

Id. at 823-824 (quoting D'Amato Investments, LLC v. Sutton, 117 Conn.App. 418, 423-24 (Conn. App. 2009).  "[T]he moving party must prove that the contractual language is not susceptible to at least two fairly reasonable meanings."  Elm Haven Const. Ltd. Partnership v. Neri Const., LLC, 281 F.Supp.2d 406, 408 (D. Conn. 2003) (citing Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9 (2d Cir. 1983).  "If the moving party cannot establish unambiguous contract language, a material issue of fact exists concerning the parties' intent, which is a question of fact, thereby rendering summary judgment inappropriate."  Id. (citing Thompson v. Gjivoje, 896 F.2d 715, 721 (2d Cir. 1990).

Hachenberger argues that the Guaranty is unambiguous in its exclusion of Greenwood's debts at the time the Guaranty was signed (August 2008).  Hachenberger himself acknowledges in an affidavit that, at the time the Guaranty was signed, Greenwood had already incurred debts to A.T. Clayton, and those debts amounted to approximately $1,500,000.  Def.'s 56(a)(1) Mot. Partial Summ. J. at ¶ 19; Ex. C at ¶ 12.

In section A of the Guaranty, under a heading marked "Recitals," the Guaranty reads: "At the request of Greenwood Advertising & New Media, Inc. . . . (the "<u>Debtor</u>"), ATC has agreed to sell paper to the Debtor from time to time (the "<u>Transaction</u>").  Def.'s 56(a)(1) Mot. Partial Summ. J. at Ex. F (emphasis in original).  For Hachenberger, the term, "has agreed to sell paper," clearly means that the Guaranty refers only to paper sales occurring in the future.  <u>See</u> Def.'s Memo. Supp. Mot. Partial Summ. J. at 9 ("Even though Park Seed, Greenwood, and A.T. Clayton had been doing business for some time in advance of the signing of this Guaranty, no reference is made in this recital to any sales having already occurred.  The phrases 'has sold,' 'continue to sell' or 'past and future sales' appear nowhere in this paragraph.  Instead, this Recital only speaks about A.T. Clayton's present intentions and proposed future actions.").  In section B under "Recitals," the Guaranty further states, "ATC's willingness to engage in the Transaction is expressly conditioned upon the Guarantor's execution and delivery of its unconditional guaranty of all of the Debtor's liabilities and obligations to ATC arising under the Transaction."  Def.'s 56(a)(1) Mot. Partial Summ. J. at Ex. F.  Hachenberger argues that because "Transaction" is defined solely in a prospective manner, the liabilities and obligations of Greenwood that Hachenberger must secure can only be those occurring after the Guaranty was signed.  Hachenberger argues that because

ATC's willingness to "engage in the Transaction" is conditioned on the Guaranty, by its own logic this statement in the Guaranty can only apply to paper sales occurring after the signing because otherwise there can be no Transaction without a Guaranty.  And if the Transaction has yet to occur, then there is nothing yet for Hachenberger to actually guaranty.  By defining the "Transaction" as an event occurring at some point after the signing of the Guaranty, Hachenberger argues that the liabilities that arise under it can likewise only emerge in the future.

Finally, Hachenberger points to the language of the Guaranty itself, which reads, "The Guarantor unconditionally guaranties the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of the Debtor to ATC now or hereafter arising on account of the Transaction."  Id.  "Simply construed, this phrase describes only those debts that come into being at the present moment, or thereafter in time or sequence.  As such, the plain language of the Hachenberger Guaranty only encompasses Greenwood's indebtedness that arise at the signing of the Guaranty, or thereafter, and then only after $1.5 million in additional debt is incurred."  Def.'s Memo. Supp. Mot. Partial Summ. J. at 11.

While a valiant effort to create a rigid temporal barrier in the Guaranty language where none exists, Hachenberger's arguments belie the simple, unambiguous meaning of the Guaranty.  Clearly the word "Transaction" is intended to apply to future paper sales, but equally unambiguous is the Recital that the willingness to engage in such future transactions is conditioned on, firstly, the guaranty of Greenwood's liabilities, and, secondly, the guaranty of obligations to A.T. Clayton that result from future sales.  Such a reading of Recital B is the only reasonable interpretation of the contract language, and

10

the only one that fits within the context of the Guaranty as a whole.  See Isham v.
Isham, 292 Conn. 170, 181 (Conn. 2009) ("Contract language is unambiguous when it
has a definite and precise meaning concerning which there is no reasonable basis for a
difference of opinion.  The proper inquiry focuses on whether the agreement on its face
is reasonably susceptible to more than one interpretation.") (internal quotations and
punctuation marks omitted). Indeed, there are clearly two elements being referred to --
liabilities and obligations – with liabilities referring to preexisting debts owed to A.T.
Clayton and obligations referring to future debts – and Hachenberger's proposed
meaning would render the word "liabilities" superfluous, something unsupported by the
remainder of the Guaranty.

This reading is confirmed by the clear language of the Guaranty itself, which
states that it applies to "all obligations of the Debtor to ATC now or hereafter arising on
account of the transaction."  The parties vigorously debate the meaning of "now" in this
context, but it is clear that the "now" encompasses then-existing liabilities.  Indeed, the
Guarantee does not itself create a paper sales contract or an obligation from the sale of
paper, so for the word "now" to apply to the exact moment of the signing of the
Guaranty is somewhat nonsensical if it is not referring to sales that occurred in the past.
Far more obvious is the application of the Guaranty language to obligations outstanding
"now" – i.e., the time of signing – in addition to new obligations created by future sales.
The sentence cannot be read to mean "all obligations  . . . now . . . arising on account of
the Transaction."

Hachenberger also argues that, if the Guaranty is read to encompass preexisting Greenwood debts, then that portion of the Guaranty is not supported by adequate consideration.  Hachenberger argues that:

> [A]dditional consideration is required where a guaranty is made independently of or subsequent to the underlying transaction that generated a currently existing debt. . . . Because the Hachenberger Guaranty was not executed at the inception [of] the relationship between Greenwood and A.T. Clayton, and because A.T. Clayton was already at risk for the sums owed to it in August of 2008, the extending of underlined additional credit towards Greenwood's purchase of underlined additional paper is the only possible consideration Hachenberger could have received.

Def.'s Memo. Supp. Mot. Partial Summ. J. at 12-13.  The Guaranty does explicitly note that, "The Guarantor has received adequate consideration in return for his delivery of this Guaranty."  The court notes that, "In Connecticut, 'the recital of consideration acknowledged as received is prima facie evidence of the fact recited.'"  Motiva Enterprise LLC v. W.F. Shuck Petroleum, No. 10-CV-793 (JCH), 2012 WL 601245, *14 n.14 (D. Conn. Feb. 22, 2012).  Courts cited by Hachenberger have found that extension of additional credit can be sufficient consideration for both preexisting and prospective debts.  See, e.g., C.I.T. Corp. v. Deering, 119 Conn. 347 (Conn. 1935).  Further, Hachenberger seems to argue that the preexisting debt portion of the Guaranty is somehow separate and distinct from debts going forward, even though the Guaranty exempts $1,500,000 million in liability – the very amount that Greenwood actually had outstanding in debt to A.T. Clayton at the time.  See Hachenberger Affidavit, Def.'s 56(a)(1) Mot. Partial Summ. J., Ex. C at ¶ 12 ("At the time I signed the Hachenberger Guaranty, Greenwood had already incurred debts to A.T. Clayton of approximately $1.5 million.").  The court is convinced, as a matter of law, that there is not a material issue of fact that this simple Guaranty agreement – guaranteeing debts (including prior liabilities,

but excluding $1,500,000 of them) in exchange for continued credit – is indeed supported by adequate consideration.

Accordingly, Hachenberger's Motion for Partial Summary Judgment is denied; the Guaranty contemplates debts preexisting at the time of the signing of the Guaranty and is supported by consideration.

B. <u>Motion for Summary Judgment</u>

The court next turns to A.T. Clayton's Motion for Summary Judgment as to Hachenberger's liability.  A.T. Clayton argues that on April 1, 2010, the date that it requested payment under the Guaranty for outstanding Greenwood debts, Greenwood owed A.T. Clayton $2,994,168.39.  As this amount exceeded the $1,500,000 amount necessary before the personal Guaranty became applicable, A.T. Clayton argues that Hachenberger breached the Guaranty and is liable under its provisions, in the amount of $1,338,282,39.  A.T. Clayton further argues that summary judgment is appropriate as to Hachenberger's affirmative defenses.

As the court concluded above, the Guaranty unambiguously makes Hachenberger liable for outstanding Greenwood debts related to the sale of paper to Greenwood that exceeds the $1,500,000 million threshold.  Hachenberger argues that

13

issues of material fact as to its actual liability remain.[4]  The court is cognizant of the fact that under the terms of the Guaranty, simply because some Greenwood debt is outstanding does not necessarily mean that Hachenberger has breached that Guaranty. Indeed, the amount due must be shown to exceed $1,500,000 million for liability to attach.

In support of the liability claim, A.T. Clayton relies on submitted invoice statements and the Affidavit of Benjamin Soule, A.T. Clayton's Chief Operating Officer. See A.T. Clayton Mot. Summ. J., Soule Aff.; Ex. D.  Soule calculates outstanding unpaid invoices for Greenwood in the amount of $2,555,582.13, outstanding service charges of $438,954.05, and credit of $106,253.79 from a payment received by A.T. Clayton in a 2010 bankruptcy.  A.T. Clayton Mot. Summ. J., Soule Aff. at ¶ 12.  This leaves the total amount due from Greenwood at $2,888,282.39.[5]  This amount is clearly larger than the $1,500,000 threshold amount.

---

[4] The court agrees with Hachenberger that he has not admitted liability in the form of an answer to A.T. Clayton's Interrogatories.  This supposed admission does not concede liability and expressly states that it is possible that no amount is owed.  Whether the outstanding debt exceeded $1.5 million is dependent on evidence, not on this non-admission.  See A.T. Clayton Mot. Summ. J. at Ex. C ("The Defendant states that the current amount owed to A.T. Clayton, if any, is presently unknown.  However, based on the documents produced by Plaintiff in discovery, the Defendant estimates that the amount due and owing is $465,371.85.  This represents the total known purchases from the date of the Defendant's guaranty through the Park Seed Bankruptcy, less the improper and/or unconscionable service charges charged by A.T. Clayton, the $1.5 million floor of the guaranty, and the $106,000 payment made by the bankruptcy trustee.  This estimate also does not include any reduction for recently discovered payments that may not have been credited to Park Seed and/or Greenwood's accounts with A.T. Clayton, including, but not limited to, a payment of $125,000.00 made 12/21/09; Check No. 299 from Evergreen, SC, LLC to A.T. Clayton in the amount of $100,000.00 dated 12/24/09; and a wire transfer of $193,000.00 to Intragrated Resource Holdings, Inc. dated 12/30/09.  The Defendant states that this is merely an estimate which may be decreased as discovery progresses and the Defendant discovers additional payments made to A.T. Clayton that were not properly credited to the park Seed and Greenwood accounts.  The Defendant further states that this estimate does not include any offsets for the value of paper returned to A.T. Clayton.").  Not only does this interrogatory answer not constitute an admission, it further raises a material issue of fact as to the total debt amount outstanding.

Hachenberger disputes that the submitted invoices demonstrate total outstanding Greenwood liability in excess of $1,500,000.  In particular, he argues that a genuine issue of material fact exists as to whether the total amount alleged improperly includes interest and service charges on prepaid debt, whether there was an unexplained increase in the amount due on at least one invoice, and whether the interest rates charged.  See Defendant's Memorandum in Opposition to Motion for Summary Judgment ("Def.'s Memo. Opp. Mot. Summ. J.") (Doc. No. 33) at 6-7.  This argument is rooted in the deposition of Soule, which does refer to the possibility of certain discrepancies.  A.T. Clayton Mot. Summ. J., Soule Aff.; Ex. D.

Astoundingly, A.T. Clayton makes no mention at all as to these issues, or their potential effect on the total amount due, in its Reply.  Similarly, Hachenberger makes no attempt to ascertain how these evidentiary discrepancies might affect the total amount in question (it is clear, for instance, that the total amount owed is only partially made up of interest due), or how these disparities "call[ ] into question whether the invoices A.T. Clayton asserts constitute the debt owed by Greenwood and therefore by Mr. Hachenberger are in fact the true and correct invoices that were issued to Greenwood in the first instance."  Def.'s Memo. Opp. Mot. Summ. J. at 7.  Indeed, Hachenberger did not retain any records of any of the companies implicated by this case and, as such, "cannot cross-reference these invoices against the ones that were received by Greenwood."  Id.  Further, Hachenberger makes no attempt to show that the dollar amounts implicated by the discrepancies would come anywhere close to pushing the total amount owed below the $1,500,000 barrier.  However, because the amount owed

---

[5] The Soule Affidavit appears to contain a basic arithmetic error. Subtracting the bankruptcy payment of $106,253.79 from the total amount due of $2,994,536.18, does not yield $2,838,282.39, but rather $2,888,282.39.  The court will use the latter amount.

is pivotal to the question of whether Hachenberger breached the Guaranty, and because A.T. Clayton completely neglected to argue that the amount owing is still sufficient to sustain a breach despite these inconsistencies, the court cannot say that no issues of material facts exist as to whether Hachenberger breached the Guaranty. Accordingly, the court denies A.T. Clayton's Motion for Summary Judgment as to liability.

### 1. Affirmative Defenses

A.T. Clayton next moves for summary judgment as to Hachenberger's affirmative defenses, most of which relate to issues of damages.  Hachenberger asserts eight affirmative defenses in his Amended Answer (Doc. No. 36).  In his Opposition, Hachenberger only defends the second affirmative defense that the breach of contract claim is barred in whole or in part by moneys owed or paid to A.T. Clayton by third parties; the sixth affirmative defense of failure to mitigate damages; the seventh affirmative defense that the debt has been discharged by bankruptcy; and the eighth affirmative defense of the doctrine of the election of remedies.  The court deems the remaining affirmative defenses abandoned.

"Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense – on which the defendant bears the burden of proof – a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case."  F.D.I.C. v. Giammetti, 34 F.3d 51, 54 (2d Cir. 1994).

The court turns first to the second affirmative defense, relating to whether the amount owed to A.T. Clayton is subject to offset and reduction by monies owed or paid

to A.T. Clayton by third parties, including Greenwood and Park Seed.  A.T. Clayton argues, "A.T. Clayton concedes that any payments would certainly offset/reduce the amount owed to A.T. Clayton by the Defendant, and the Affidavit of Benjamin Soule has taken all third party payments into account."  See A.T. Clayton Mot. Summ. J. at 28. Hachenberger argues that a material issue of fact remains as to whether all such payments had been credited and that, because the motion for Summary Judgment is solely as to liability and not as to the amount of damages, summary judgment is inappropriate.  A.T. Clayton does not address this argument in its Reply.  The court notes that the issue of liability here is somewhat unique in that the amount of damages directly controls whether or not Hachenberger in fact breached the Guaranty.  In other words, if less than $1,500,000 in Greenwood debt remained outstanding, then Hachenberger's failure to pay would not constitute breach.  As such, because a material issue of fact still exists as to whether the Guaranty was breached, and because neither party has taken the time to elucidate what payments may or may not be at issue (or, for that matter, to cite any case law), the court finds summary judgment as to this affirmative defense inappropriate here.

The court next turns to the sixth affirmative defense of mitigation of damages.  In opposition to A.T. Clayton's claim that no factual evidence exists that it failed to mitigate its damages resulting from the Guaranty, Hachenberger argues, "The Plaintiff has demonstrated no efforts to mitigate its own losses by attempting to collect from the underlying debtor and primary guarantor other than by submitting a claim in the Park Seed bankruptcy.  To be sure, A.T. Clayton never sued Park Seed or Greenwood when they were solvent."  Def.'s Memo. Opp. Mot. Summ. J. at 10.  A.T. Clayton asserts,

again without citation to authority, that, "Simply put, there is no duty to mitigate

damages between two commercial entities on a credit agreement and/or guaranty

agreement.  Rather, the duty to mitigate damages in a breach of contract action typically

arises in a landlord-tenant situation."  A.T. Clayton Mot. Summ. J. at 26.  A.T. Clayton

further argues that the Guaranty itself includes a waiver that provides that it has no duty

to mitigate.  The section of the Guaranty A.T. Clayton references reads:

> 3.  <u>Waiver</u>.  The Guarantor waives promptness, diligence, notice of acceptance,
> notice of presentment, demand or protest and any other notice with respect to
> any of the Obligations and this Guaranty <u>and any requirement that ATC take any
> action or exhaust any right against the Debtor or any person or entity or any
> collateral</u>.

Def.'s 56(a)(1) Mot. Partial Summ. J. at Ex. F (emphasis added).  The language of the

Guaranty appears unequivocal: Hachenberger has explicitly waived any requirement

that A.T. Clayton exhaust any right at all against Greenwood, including the obligation to

pursue mitigating payments through the bankruptcy process.  The parties' intent is

further underlined by the section of the Guaranty labeled "Guaranty Absolute," which

reads:

> 2.  <u>Guaranty Absolute</u>.  (a)  The Guarantor guaranties that the Obligations will be
> paid strictly in accordance with the terms thereof regardless of any law,
> regulation or order now or hereafter in effect in any jurisdiction affecting any of
> such terms or the rights of ATC with respect thereto.  The liability of the
> Guarantor under this Guaranty shall be absolute and unconditional.
>
> (b)  This Guaranty shall continue to be effective or be reinstated, as the case
> may be, if at any time any payment of any of the obligations by the Debtor is
> rescinded or must otherwise be returned by ATC due to the insolvency,
> bankruptcy or reorganization of the Debtor, or otherwise, all as though such
> payment had not been made.

<u>Id</u>.  Hachenberger's absolute promise to pay, combined with the explicit waiver of A.T.

Clayton's obligation to exhaust any rights against the debtor, and the general, basic

purpose of personal guaranties, convince this court that summary judgment against Hachenberger is appropriate as to this sixth affirmative defense.

Next, the court addresses Hachenberger's seventh affirmative defense concerning whether A.T. Clayton's cause of action is barred in whole or in part because the debt claimed by A.T. Clayton has been discharged in bankruptcy.  The court grants A.T. Clayton's summary judgment motion as to this affirmative defense as well.

The Guaranty makes specific provision for the potential discharge of debt obligations as a result of "insolvency, bankruptcy or reorganization."  Greenwood's status as an administratively dissolved entity surely fits under the rubric of, at the very least, "reorganization."  Thus, by the very face of the Guaranty itself, no material issue of fact remains as to this affirmative defense and summary judgment is appropriate. Additionally, the court notes the general warnings of the Restatement of Laws, which notes: "Indeed, an oblige who insists upon a secondary obligation as a condition of extending credit is typically most concerned about the risk of discharge in bankruptcy proceedings.  If the principal obligor's defense of discharge in bankruptcy proceedings could be raised by the secondary obligor, the value of the secondary obligation would be seriously diminished.  Accordingly, this defense may not be raised by the secondary obligor."  Restatement (Third) Suretyship and Guaranty § 34.  There are no material issues of fact and, as a matter of law, the seventh affirmative defense fails.  The Guaranty is absolute and unambiguous in regards to obligations in the event of insolvency or reorganization.

Finally, the court turns to the eighth affirmative defense, concerning election of remedies.  Hachenberger argues that material facts exist as to whether A.T. Clayton is

precluded from filing suit to collect on the Hachenberger personal guaranty because A.T. Clayton first attempted to collect on the debts of Park Seed and J&P in bankruptcy proceedings.  Hachenberger cites no authority for this proposition.  The court notes, as it did above, that the Guaranty makes specific provision for the eventual bankruptcy of the debtor.  Beyond that, however, it strains credulity to assert that pursuing a debt from the original debtor (or the entities that absorbed that debtor's assets) is in any way inconsistent with the pursuit of payment from a guarantor.  Such a proposition would undermine the very purpose of obtaining secondary guaranties in the first place. Accordingly, the court grants A.T. Claytons Motion for Summary Judgment as to the eighth affirmative defense.

## V.   CONCLUSION

For the foregoing reasons, the court **denies** Hachenberger's Motion for Partial Summary Judgment (Doc. No. 29).  The court **grants** A.T. Clayton's Motion for Summary Judgment (Doc. No 30) to the extent that it concerns Hachenberger's obligations regarding preexisting debts and to the extent that it concerns Hachenberger's First, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.  The court **denies** the Motion for Summary Judgment to the extent that it concerns Hachenberger's liability for breach of the Guaranty because there is a material issue of fact as to the amount owed, and to the extent that it concerns Hachenberger's Second Affirmative Defense.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 29th day of January, 2013.


     /s/ Janet C. Hall
Janet C. Hall
United States District Judge